# No. 26-2516

**IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

THE NIELSEN COMPANY (US), LLC,
*Defendant-Appellant,*

v.

CUMULUS MEDIA NEW HOLDINGS INC.,
*Plaintiff-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York
Hon. Jeannette A. Vargas
Case No. 1:25-cv-08581 (JAV)

**Opening Brief of Defendant-Appellant The Nielsen Company (US), LLC**

Jefferson E. Bell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000

Thomas H. Dupree Jr.
*Counsel of Record*
Helgi C. Walker
Zachary B. Copeland
Patrick M. Kennedy
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: (202) 955-8500

*Counsel for Defendant-Appellant The Nielsen Company (US), LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel certifies the following:

The Nielsen Company (US), LLC is a subsidiary of ACNielsen Corporation, which is a privately held company. No publicly traded company holds more than 10% of The Nielsen Company (US), LLC's stock.

September 30, 2026 /s/ *Thomas H. Dupree Jr.*

## TABLE OF CONTENTS


INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 5

STATEMENT OF ISSUES .......... 6

STATEMENT OF THE CASE .......... 7

I. Cumulus sues over the price of standalone Nationwide .......... 7

II. The district court enjoins two practices without ordering a sale .......... 8

III. This Court affirms because the Injunction does not require a forced sale .......... 10

IV. Nielsen twice offers standalone Nationwide at less than half the condemned price .......... 11

V. The district court compels an offer, backed by daily fines .......... 15

VI. This Court stays the Order pending appeal .......... 18

STANDARD OF REVIEW .......... 19

SUMMARY OF ARGUMENT .......... 20

ARGUMENT .......... 24

I. The Order impermissibly modifies the Injunction this Court affirmed .......... 24

A. The Order adds obligations the Injunction does not contain, contrary to this Court's mandate .......... 24

B. The Order imposes those obligations without the showing a new mandatory injunction requires .......... 31

II. The Sherman Act does not permit a court to compel dealing or set its terms absent a duty to deal .......... 35

A. The Order compels Nielsen to deal though no court has found a duty to deal ........ 36

B. The Order makes the district court a rate-setting regulator ........ 40

III. The Order's daily fine is a contempt sanction imposed without contempt findings ........ 45

A. The Injunction was not clear and unambiguous as applied to Nielsen's offer ........ 47

B. Cumulus did not establish a violation by clear and convincing proof ........ 50

C. Nielsen diligently attempted to comply ........ 52

CONCLUSION ........ 53

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) .......... 41

*Briggs v. Pa. R.R. Co.*,
334 U.S. 304 (1948) .......... 30

*Chao v. Gotham Registry, Inc.*,
514 F.3d 280 (2d Cir. 2008) .......... 47

*Chevron Corp. v. Donziger*,
990 F.3d 191 (2d Cir. 2021) .......... 47

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) .......... 35

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) .......... 35, 39, 42

*Cumulus Media New Holdings Inc. v. Nielsen Co. (US), LLC*,
182 F.4th 108 (2d Cir. 2026) .......... *passim*

*EEOC v. N.Y. Times Co.*,
196 F.3d 72 (2d Cir. 1999) .......... 18, 46

*FTC v. Bronson Partners, LLC*,
654 F.3d 359 (2d Cir. 2011) .......... 19, 35

*In re Gravel*,
6 F.4th 503 (2d Cir. 2021) .......... 49

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) .......... 48

*Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.*,
341 F.2d 101 (2d Cir. 1965) .......... 50

*Hughes v. United States*,
342 U.S. 353 (1952) .......... 31

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) .......... 43

*Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*,
389 U.S. 64 (1967) .......... 50

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994) .......... 20, 46

*In re Ivan F. Boesky Sec. Litig.*,
957 F.2d 65 (2d Cir. 1992) .......... 30

*JLM Couture, Inc. v. Gutman*,
91 F.4th 91 (2d Cir. 2024) .......... 31, 32, 33, 35

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995) .......... 26, 46, 52

*Latino Officers Ass'n v. City of New York*,
558 F.3d 159 (2d Cir. 2009) .......... 46

*Levin v. Tiber Holding Corp.*,
277 F.3d 243 (2d Cir. 2002) .......... 52

*NCAA v. Alston*,
594 U.S. 69 (2021) .......... 40, 43, 44

*Next Invs., LLC v. Bank of China*,
12 F.4th 119 (2d Cir. 2021) .......... 47

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 19, 49

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013) .......... 37, 41

*Off. Airline Guides, Inc. v. FTC*,
630 F.2d 920 (2d Cir. 1980) .......... 37, 40, 41

*Oreck Corp. v. Whirlpool Corp.*,
579 F.2d 126 (2d Cir. 1978) ........ 40

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009) ........ 4, 40, 42, 43

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004) ........ 17

*Peregrine Myan. Ltd. v. Segal*,
89 F.3d 41 (2d Cir. 1996) ........ 39

*Perez v. Danbury Hosp.*,
347 F.3d 419 (2d Cir. 2003) ........ 20, 25, 26, 47

*Puricelli v. Republic of Arg.*,
797 F.3d 213 (2d Cir. 2015) ........ 19

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010) ........ 20

*Schmidt v. Lessard*,
414 U.S. 473 (1974) ........ 48

*SEC v. Smith*,
710 F.3d 87 (2d Cir. 2013) ........ 6

*Sierra Club v. U.S. Army Corps of Eng'rs*,
732 F.2d 253 (2d Cir. 1984) ........ 33

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ........ 39

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) ........ 19, 35

*Taggart v. Lorenzen*,
587 U.S. 554 (2019) ........ 46, 49

*Terminal R.R. Ass'n of St. Louis v. United States*,
266 U.S. 17 (1924) ........ 45, 49

*Town of Concord v. Bos. Edison Co.*,
915 F.2d 17 (1st Cir. 1990) .......... 42

*Town of Islip v. E. Air Lines, Inc.*,
793 F.2d 79 (2d Cir. 1986) .......... 50, 52

*In re Tronox Inc.*,
855 F.3d 84 (2d Cir. 2017) .......... 31, 32

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 34

*Twin Lab'ys, Inc. v. Weider Health & Fitness*,
900 F.2d 566 (2d Cir. 1990) .......... 38

*Unijax, Inc. v. Champion Int'l, Inc.*,
683 F.2d 678 (2d Cir. 1982) .......... 41

*United States v. Armour & Co.*,
402 U.S. 673 (1971) .......... 28

*United States v. Ben Zvi*,
242 F.3d 89 (2d Cir. 2001) .......... 30

*United States v. Colgate & Co.*,
250 U.S. 300 (1919) .......... 36

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966) .......... 39

*United States v. Loew's, Inc.*,
371 U.S. 38 (1962) .......... 36, 38

*United States v. Trenton Potteries Co.*,
273 U.S. 392 (1927) .......... 44

*United States v. U.S. Dist. Ct. for S. Dist. of N.Y.*,
334 U.S. 258 (1948) .......... 6

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) .......... 4, 17, 36, 37, 38, 40, 41, 45

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
423 F.3d 137 (2d Cir. 2005) .......... 31

**Statutes**

15 U.S.C. § 2 .......... 5, 8

15 U.S.C. § 26 .......... 35, 36

28 U.S.C. § 1292 .......... 6, 31

28 U.S.C. § 1331 .......... 5

28 U.S.C. § 1651 .......... 6

**Rules**

Fed. R. Civ. P. 65 .......... 47, 50

## INTRODUCTION

This Court affirmed a preliminary antitrust injunction (the "Injunction") against Defendant-Appellant The Nielsen Company (US), LLC in part because of what the Injunction did *not* do: it did *not* require "a forced sale of Nationwide," Nielsen's national radio-ratings report. *Cumulus Media New Holdings Inc. v. Nielsen Co. (US), LLC*, 182 F.4th 108, 140 (2d Cir. 2026). Just eight weeks later, the district court "enforced" the Injunction by rewriting it in a way contrary to this Court's reasoning. The lower court's order (the "Order") directed Nielsen to offer Nationwide to Plaintiff-Appellee Cumulus Media New Holdings Inc., for [redacted], at a price the court would approve but declined to name. The Order gave Nielsen until 3:00 p.m. the next day to comply, on pain of a $50,000 daily fine. Chief Judge Lohier administratively stayed the Order; then a three-judge motions panel stayed it pending appeal.

Nielsen measures radio audiences. It sells ratings for more than 270 local markets and also sells Nationwide, a national report built entirely from that local data. Cumulus owns hundreds of local stations and the largest national radio network, Westwood One, which buys Nationwide. Under Nielsen's Network Policy, a network that owns local stations

receives Nationwide data for those markets only if it also buys local ratings. Nielsen exempted Cumulus from the Policy by offering Nationwide on its own, but last December the district court found that Nielsen's standalone price for Nationwide was so high, relative to its bundled price, that it effectively coerced Cumulus into buying local data—giving rise to what the court called a "constructive tie." Sealed Appendix ("SA") 032.

The Injunction that followed bars Nielsen from applying its Network Policy and from charging Cumulus "a commercially unreasonable rate" for standalone Nationwide, and it treats as presumptively reasonable any rate at or below the highest 2026 rate Nielsen charges any broadcaster for Nationwide. SA-046–47. It affirmatively commands nothing and does not require Nielsen to sell Nationwide to Cumulus. As the district court put it at the time, "[t]he antitrust laws do not require Nielsen to provide [Cumulus] with a product it can afford." SA-041–42. This Court affirmed on that understanding, holding that the Injunction "prohibit[ed]" only particular "conduct"—"Nielsen's express and constructive enforcement of its Network Policy." *Cumulus Media*, 182 F.4th at 140.

Nielsen did not violate the Injunction. It complied. It stopped applying the Network Policy, offered Nationwide only on its own with no

bundle on the table, and retained an economic expert to benchmark a reasonable standalone price against Nielsen's arm's-length contracts. It then made Cumulus an offer based on that analysis, and later cut its price further. Its last offer was [redacted] for [redacted]—an annualized [redacted], well under half the [redacted] annual price the court had condemned. Cumulus nonetheless pushed for an even better deal, moving the court to order a forced sale on the terms Cumulus wanted.

The district court granted the motion even though it found that Nielsen's [redacted] offer cut the standalone price by [redacted] a year—more than [redacted] times the $1.2 million premium that, in the court's earlier view, had made buying Nationwide separately uneconomic. SA-108. The court held the offer commercially unreasonable, and thus a violation of the Injunction, because it doubted Nielsen's economic expert and disapproved of a [redacted] term. SA-108–09, SA-112. Nielsen objected that the Injunction compels no offer and says nothing about duration. The court called that objection "disingenuous," SA-112, having already dismissed "semantics about what the PI says," SA-049, at 11:18–19.

The district court erred in three independent ways. First, the Order impermissibly modifies the Injunction. The Injunction prohibits conduct;

the Order commands it—in effect, it directs Nielsen to sell Nationwide to Cumulus at a price Cumulus will accept, for a [redacted] term the Injunction never mentions, and gives Nielsen one day to make the offer or face daily $50,000 fines. No such obligations appear in the Injunction, and a district court may not add them under the guise of enforcement, nor impose them without the heightened showing a new mandatory injunction requires and Cumulus never made. Those limits hold whether or not Nielsen violated the Injunction—and Nielsen did not.

Second, the Order compels Nielsen to deal with Cumulus though no court has found that Nielsen owes it a duty to deal. The district court found only a likely constructive tie, and Nielsen separated the products by offering Nationwide on its own. Absent a duty to deal, "businesses are free to choose the parties with whom they will deal," *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009), and may decline a sale they consider unprofitable. The Injunction left Nielsen that choice. The Order took it away and installed the court as the regulator of the terms of Nielsen's next offer, a "role for which [courts] are ill suited." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).

Third, the daily fine is a coercive contempt sanction imposed without the findings contempt requires. The district court never found the Injunction clear as applied to Nielsen's offer, penalized Nielsen for pricing outside the presumption, and found a violation only by a preponderance of the evidence, after shifting the burden to Nielsen. And Nielsen diligently tried to comply, pricing its offers on an expert's analysis of its arm's-length contracts.

If the Order stands, Nielsen must offer Nationwide to Cumulus for [redacted] at a price far below the lowest it is willing to accept as a matter of business judgment. The Injunction this Court affirmed requires none of that, and it remains in force whatever becomes of the Order. This appeal challenges the Order, not the Injunction. This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because this action arises under Section 2 of the Sherman Act, 15 U.S.C. § 2. On September 9, 2026, the district court entered the Order, directing Nielsen to offer Nationwide to Cumulus by 3:00 p.m. the next day and imposing a daily fine for noncompliance. SA-113; *see* Appendix ("A") 111. Nielsen timely filed a notice of appeal the same day. A-112–13.

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1), which authorizes appeals from interlocutory orders "modifying" injunctions. The Order modifies the Injunction by imposing obligations the Injunction does not contain and enforcing them with daily fines. *See infra* Argument, Part I.B. The fines are reviewable with the obligations they enforce. *See SEC v. Smith*, 710 F.3d 87, 96–97 (2d Cir. 2013).[1]

## STATEMENT OF ISSUES

**I.** Whether the district court violated this Court's mandate and impermissibly modified the Injunction by ordering Nielsen to offer Nationwide to Cumulus at an unspecified price and for a term the court would approve, when the Injunction this Court affirmed prohibits two practices and compels no offer or sale.

**II.** Whether the district court erred as a matter of law by ordering Nielsen to offer Nationwide to Cumulus at an unspecified price and for a

[1] If the Court concludes that the Order does not modify the Injunction, Nielsen asks the Court in the alternative to treat this appeal as a petition for a writ of mandamus and to grant the writ. *See* 28 U.S.C. § 1651(a). Mandamus is a "proper remedy to enforce compliance with the mandate," *United States v. U.S. Dist. Ct. for S. Dist. of N.Y.*, 334 U.S. 258, 264 (1948), and the Order disregards this Court's mandate, *see infra* Argument, Part I.A.

term the court would approve, when no court had found that Nielsen owed Cumulus a duty to deal.

**III.** Whether the district court erred as a matter of law by imposing a coercive fine of $50,000 a day without finding that (a) the Injunction clearly and unambiguously barred Nielsen's offer, (b) Cumulus proved noncompliance by clear and convincing evidence, or (c) Nielsen had not diligently attempted to comply.

## STATEMENT OF THE CASE

### I. Cumulus sues over the price of standalone Nationwide.

Nielsen is the leading provider of radio audience-ratings data in the United States. *See* SA-101. Its surveys of listeners in more than 270 local markets yield two products. *Id.* Stations use Nielsen's local-market data to sell local advertising, and networks use its "Nationwide" report—which aggregates that local data into a single national dataset—to sell network advertising. SA-100–01. Because Nationwide is built entirely from local inputs, Nielsen prices both products to recover the cost of collecting local data. SA-101–02.

In September 2024, Nielsen adopted a Network Policy. SA-008. For the twelve customers that operate both a national network and local

stations, Nielsen would exclude from the customer's Nationwide report any market where the customer owned a station but did not buy local data. SA-008–10. Cumulus, one of the twelve, operates hundreds of local stations and the largest national network, Westwood One, through which it buys Nationwide. SA-004, SA-010, SA-100.

In 2025, as the parties' contract neared expiration, Cumulus sought to reduce its spending. Nielsen made several renewal offers and, on September 15, exempted Cumulus from the Network Policy by offering standalone Nationwide for [redacted] a year. SA-012–18. Cumulus made no standalone counteroffer, and a month later it sued under Section 2 of the Sherman Act and moved for a preliminary injunction. *See* D. Ct. Dkts. 1, 8.

## II. The district court enjoins two practices without ordering a sale.

On December 30, 2025, the district court (Vargas, J.) entered the Injunction. SA-046–47. The court found no "explicit tie" as to Cumulus, which Nielsen had exempted from the Network Policy, but held that Nielsen's standalone price was "so exorbitant as to make it economically unfeasible" for Cumulus to buy the products separately, and so "served as a constructive tie" in likely violation of Section 2 of the Sherman Act. SA-

032. The court identified the harm to be remedied as "the anticompetitive effects of the Network Policy," and the particular conduct to be stopped as "conditioning—both expressly and constructively—the purchase of Nationwide on the purchase of all local ratings data." SA-046.

In fashioning relief, the court declined to give Cumulus what it had sought. Cumulus had rejected Nielsen's offer to extend the existing contract through the litigation and wanted the court to compel a new contract for Nationwide and a smaller set of local markets, at the prices allocated to those markets under the expiring agreement. SA-018, SA-045. Cumulus "cannot cherry-pick those provisions of its prior contract that it wishes to keep and those that it wishes to drop," the court explained, and it "is not entitled to dictate the terms of a new contract with Nielsen." SA-045. Nor, the court noted, do the antitrust laws oblige Nielsen to price Nationwide within Cumulus's budget. *See* SA-041–42.

The Injunction instead contains two prohibitions. The first provides that Nielsen "is enjoined and restrained from enforcing its Network Policy." SA-046–47. The second, the rate prohibition, provides that Nielsen "is enjoined and restrained from charging a commercially unreasonable rate for its Nationwide Report as a complete, standalone product."

*Id.* The Injunction also states that "a rate that is equal to or lower than the highest annual 2026 rate Nielsen charges any broadcaster (whether network or local) for Nationwide is presumptively reasonable." SA-047. The court required Cumulus to post a $100,000 bond. *Id.*

## III. This Court affirms because the Injunction does not require a forced sale.

Nielsen appealed and sought a stay. The district court acknowledged that the Injunction would irreparably harm Nielsen but denied a stay. A-048–50. This Court entered an administrative stay on January 16, 2026, No. 26-88, Dkt. 27.1, and shortly after oral argument on February 3, a motions panel granted a stay pending appeal, No. 26-88, Dkt. 45.1.

On July 13, 2026, the merits panel affirmed. It held that "[c]onstructive tying is a viable theory of Sherman Act liability" and that the district court did not abuse its discretion in finding that Nielsen had "effectively coerced Cumulus into purchasing its local data in certain markets." *Cumulus Media*, 182 F.4th at 126, 128. The panel determined that at Nielsen's [redacted] standalone price, buying Nationwide from Nielsen and local data from a competitor would have cost Cumulus $1.2

million more than buying both from Nielsen, leaving Cumulus "only an illusory choice." *Id.* at 129–30.

The panel also concluded that the Injunction could remedy Cumulus's claimed harm—its impending loss of access to Nationwide—without requiring "a forced sale of Nationwide." *Id.* at 140. The Injunction targeted the conduct the district court had found unlawful, and prohibiting that conduct would "assuage" Cumulus's harm by protecting its "ability to properly negotiate." *Id.*

This Court denied panel rehearing and rehearing en banc on August 18, 2026. No. 26-88, Dkt. 96.1. The mandate issued on August 25. No. 26-88, Dkt. 99.1; A-051–106. Nielsen has petitioned for a writ of certiorari. Pet. for Cert. ("Pet."), *Nielsen Co. (US), LLC v. Cumulus Media New Holdings Inc.*, No. 26-370 (U.S. filed Sept. 15, 2026).

## IV. Nielsen twice offers standalone Nationwide at less than half the condemned price.

Within two weeks of the panel's decision, and before the mandate issued, Cumulus moved to enforce the Injunction. It asked the district court to order Nielsen to make a binding written offer within two business days at a rate "consistent with" the Injunction's presumption. D. Ct. Dkt. 188 at 1, 3. On July 31, Nielsen offered standalone Nationwide at

[redacted] for [redacted], which annualizes to [redacted], less than half the [redacted] price the district court had found coercive. SA-106; SA-057 ¶ 16. [redacted] covers [redacted] of Nationwide, which Nielsen publishes on a [redacted], and Nielsen's "typical practice" is to offer [redacted] terms when there is "uncertainty in the price or value proposition with a customer," to avoid locking in "a long-term price that may turn out to be too high or too low in light of developing or changing circumstances." SA-057–58 ¶¶ 16–18.

Nielsen priced that [redacted] offer with the help of an outside economic expert, Dr. Mark Zmijewski of the University of Chicago Booth School of Business. SA-103–04; SA-056–57 ¶ 15. As Nielsen's lead negotiator, Rich Tunkel, later explained, no customer of Westwood One's size had ever bought Nationwide alone, and Nielsen's bundled contracts do not separately negotiate a price for it, so Nielsen had no "clear commercial precedent." SA-052 ¶ 1, SA-055–56 ¶¶ 12–14. Nielsen has long charged "higher rates [to] larger customers," because they "derive significantly more value from their use of Nielsen's data." SA-054–55 ¶¶ 9–10. Dr. Zmijewski tested Nielsen's relationship with 75 of its customers, comparing what they paid Nielsen with their broadcast revenue, and

estimated that a customer of Westwood One's size would pay about "[redacted] to [redacted]" a year. SA-104–06.

Cumulus rejected the offer and countered at [redacted] for [redacted]. SA-106. It then asked the court to deem the price and term of Nielsen's offer unlawful, D. Ct. Dkts. 198, 205, and sought expedited consideration because its access to Nationwide would end on September 10, when Nielsen was scheduled to publish its next Nationwide release, *see* SA-100; SA-059 ¶ 21. That date had been fixed since 2025, D. Ct. Dkt. 1 ¶ 121, yet Cumulus had made no proposal to Nielsen in the five months that the Injunction was stayed pending appeal, SA-099, SA-103.

At an August 28 conference on the motion, Nielsen's counsel explained why the offer complied with the Injunction. He stated that the Injunction was "designed to prevent an actual or constructive enforcement of the network policy," and that Nielsen's offer in no way applied the Policy. A-108, at 8:15–19. The court told Nielsen's counsel that it was "your burden to show why [redacted] here would be commercially reasonable." SA-049, at 11:14–16. And when counsel pointed out that nothing in the Injunction "regulates the duration of the contract term,"

the court responded that "semantics about what the PI says is not helpful to this conversation." *Id.* at 11:11–19.

The court said it was "reluctant to make myself a rate setter here," A-109, at 22:1, but ordered an evidentiary hearing on the reasonableness of Nielsen's "price and terms," including duration, A-110, at 31:14–19. At the September 1 hearing, Dr. Zmijewski testified to his analysis, and the court received an unrebutted declaration from Tunkel. *See* SA-101, SA-104–06. Tunkel attested that since the Injunction issued, Nielsen had not applied the Network Policy in any negotiation or proposed any bundle to Cumulus, and that Nielsen's "costs to generate its audio ratings data in 2026 are expected to exceed [redacted]." SA-053–54 ¶¶ 4–8. Cumulus offered no expert.

The day after the hearing, Nielsen reduced its price to [redacted] for [redacted] ([redacted] annualized). SA-106. Cumulus rejected that offer the following morning and countered at [redacted] for [redacted]. *Id.* The parties submitted proposed findings of fact and conclusions of law that week. D. Ct. Dkts. 223, 230.

## V. The district court compels an offer, backed by daily fines.

On September 9, 2026, the district court granted Cumulus's motion to enforce the Injunction and entered the Order. *See* SA-113–14. Applying a "preponderance of the evidence" standard, the court held that Nielsen's [redacted] offer was commercially unreasonable and "thus in violation of" the Injunction. SA-107, SA-113. The court also found that the offer cut the annualized price by [redacted], more than [redacted] times the $1.2 million gap the court had previously found coercive. SA-108.

The court turned to whether the offer was reasonable. It began by rejecting Cumulus's argument that a "commercially reasonable price for standalone Nationwide must be tethered to" the Nationwide line items in Nielsen's bundled contracts—the portions of those contracts' single negotiated prices that are allocated to Nationwide for accounting purposes. *Id.*; SA-056 ¶ 14. The court found that approach failed to "adequately account for Nielsen's bundled pricing strategy or its historic practice of charging different rates for different values extracted from its products." SA-108 (citing SA-054–56 ¶¶ 9–10, 14). The court still found the offer unreasonable, for two reasons.

First, it found that Nielsen's pricing model was not "without cause for concern," principally because Dr. Zmijewski relied on the prices Nielsen's other customers pay, which the court thought might be affected by "anticompetitive monopolistic conduct." SA-109. It also faulted his use of Westwood One's 2024 revenue, reasoning that "Cumulus's financial troubles, and indeed its bankruptcy," were "relevant" to what Nielsen could charge it. SA-110–11. The court did not say how either concern would change Dr. Zmijewski's estimate, and it noted that Cumulus had offered no "way to cure the faults it identifie[d]." *Id.*

Second, the court rejected the offer's [redacted] term. It acknowledged that Nielsen "sometimes offer[s] [redacted] terms" in some circumstances, but noted that Nielsen "typically" offers [redacted] terms and found that it had "not offered a convincing explanation of why it has deviated from the typical contract term in this case." SA-112. The court dismissed as "disingenuous" Nielsen's argument that requiring a contract of a certain duration would modify an Injunction that "says nothing about duration," because the "record" showed that "commercially reasonable rates in this industry are[] based upon [redacted] contracts." SA-112–13.

The court's Order issued at 6:51 p.m. on September 9 and directed Nielsen "to offer its Nationwide Report as a standalone product to Cumulus for a commercially reasonable rate" by 3:00 p.m. the next day. SA-113. The Order did not say what rate would comply, or how [redacted] the offer must run. It acknowledged that Nielsen is "free . . . to charge monopoly prices," SA-110 (citing *Trinko*, 540 U.S. at 407), and that the Injunction's presumption does not define "the only commercially reasonable rate," SA-112. Yet the court admonished Nielsen for offering a rate "many multiples above" the presumption, questioned Nielsen's "good faith," and concluded that Nielsen, having "made the decision not to avail itself of" the presumption, had "assumed the risk that its offer would be found not to comply." SA-113.

The court further directed that "[s]hould Nielsen fail to comply with this Order, it shall be subject to monetary sanctions in the amount of $50,000 per day until it comes into compliance." *Id.* For that directive it cited a decision stating that a party who violates an injunction "faces the threat of both civil and criminal contempt." *Id.* (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004)). The court recited the three findings that a

sanction to compel compliance requires, SA-107 (citing *EEOC v. N.Y. Times Co.*, 196 F.3d 72, 80–81 (2d Cir. 1999)), but made none of them, *see* SA-108–13.

## VI. This Court stays the Order pending appeal.

Nielsen noticed this appeal within hours of the Order, A-112–13, and moved this Court for an administrative stay and a stay pending appeal the next morning, CA2 Dkt. 10.1. At 3:00 p.m. that day, with no stay yet in place, Nielsen made the offer the Order required, under protest and on the price and term of Cumulus's first counteroffer. CA2 Dkt. 22.1 at 2. Chief Judge Lohier entered an administrative stay at 3:11 p.m., and Nielsen withdrew the offer. *See* CA2 Dkts. 20.1, 21.1 at 2. That evening, Cumulus asked the Court to lift the stay before midnight, when it said it would "lose access to Nielsen's Nationwide product" and suffer "irreparable injury." CA2 Dkt. 21.1 at 1. Nielsen opposed the request, CA2 Dkt. 22.1, and the Court declined to lift the administrative stay.

The stay motion was fully briefed within three days, and the Court scheduled oral argument for September 16. *See* CA2 Dkts. 10.1, 17.1, 24.1, 25.1. The day before argument, Cumulus sought leave to file a surreply contesting, for the first time, this Court's jurisdiction over the

appeal. *See* CA2 Dkts. 26.1, 40.1. The motions panel (Park and Walker, JJ., and Halpern, D.J.) heard argument on September 16, granted the stay the same day under *Nken v. Holder*, 556 U.S. 418, 434 (2009), expedited the appeal, and directed that argument be scheduled before the next available merits panel. CA2 Dkt. 33.1. Cumulus then petitioned for rehearing en banc of the stay order and moved to expedite the appeal further. CA2 Dkts. 36.1, 37.1. The panel denied the motion to further expedite, CA2 Dkt. 44.1, and the en banc petition remains pending.

## STANDARD OF REVIEW

This Court "review[s] *de novo* whether the District Court has complied with [the] mandate." *Puricelli v. Republic of Arg.*, 797 F.3d 213, 218 (2d Cir. 2015). It reviews orders granting or modifying injunctive relief for "abuse of discretion," but its review "is *de novo*" where "allegations of error in a preliminary injunction involve questions of law." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (quotation marks omitted). The "scope of [a] district court's remedial authority" under a statute is likewise "an issue of statutory interpretation" that this Court decides *de novo*. *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011).

Coercive fines "designed to compel future compliance with a court order" are "civil contempt sanctions." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). This Court reviews them for abuse of discretion under a standard "that is more rigorous than usual," with "a *de novo* review of any rulings of law made by the district court." *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010) (quotation marks omitted). And it decides for itself whether the order allegedly violated was "clear and unambiguous." *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–25 (2d Cir. 2003).

## SUMMARY OF ARGUMENT

The Order cannot be sustained. It adds obligations the Injunction does not contain, compels Nielsen to deal with Cumulus with no finding of a duty to deal, and backs those obligations with a $50,000 daily fine imposed without the findings a coercive sanction requires.

**I.** The Order unlawfully expands the Injunction.

**A.** The Order commands what the Injunction does not. The Injunction bars two practices and compels nothing. The Order directs Nielsen to offer Nationwide to Cumulus at a price the court will approve, for a term of [redacted] the Injunction never mentions. Having rejected both

sides' benchmarks and named no compliant rate, the court left Cumulus's own counteroffer as Nielsen's one safe offer, and an order that forces a seller to offer on the buyer's terms operates as an order to sell. The Order thus disregards both the Injunction's text and this Court's decision affirming it, which concluded that the Injunction could remedy Cumulus's harm without a forced sale.

**B.** Cumulus never made the showing required for new mandatory relief. By changing what the Injunction requires, the Order modifies it, which gives this Court jurisdiction and triggers the heightened standard for mandatory relief. The showing Cumulus made last December concerned a likely tie, which the Injunction already addresses, and established no right to compel a sale. Cumulus never attempted a new showing, and the district court never asked it to. The court asked only whether Nielsen had complied, and it treated a finding of noncompliance as a shortcut to new relief.

**II.** The Order exceeds a court's remedial power under the antitrust laws.

**A.** Nothing in this record justifies an order to deal. Absent a duty to deal, a private seller chooses its own customers, and no court has found

such a duty here. Relief under Section 16 of the Clayton Act must answer the violation proved—in this case, a likely constructive tie, which ends when the seller stops conditioning the sale of one product on the sale of the other. The Injunction already ends any conditioning, and a command to deal goes well beyond that cure, remedying a wrong Cumulus never litigated. The Order's stated purpose is to keep a bankrupt customer from losing a product the district court considered essential, a concern a tying claim does not address. And that Nielsen is willing to sell at its own price does not justify compelling it to sell at Cumulus's.

**B.** The Order also puts the district court in the business of pricing Nationwide. The court judged the offer by what it believed Nationwide ought to cost—questioning Nielsen's costs and its expert's valuation assumptions, discounting what other customers pay, weighing Cumulus's finances, and measuring the term against industry custom. The Supreme Court has warned judges away from those rate-setting judgments, which antitrust law leaves to the market. And under the Order's logic, every later offer and renewal would return to the court for the same inquiry.

**III.** The daily fine fails every requirement for a civil contempt sanction, which is available only if the order was clear and unambiguous, noncompliance was proved clearly and convincingly, and the party did not diligently try to comply. The district court made none of those findings, nor could it have.

**A.** The Injunction did not clearly forbid Nielsen's offer. Nielsen read the Injunction, as this Court had explained it, to restrain pricing that recreates the tie. The district court read it instead to call for judgments about costs, customer value, and revenue that the Injunction never mentions. And the Injunction says nothing about duration.

**B.** Cumulus never proved a violation by clear and convincing evidence. It offered no expert, and the court rejected the only benchmarks Cumulus proposed. Yet the court found a violation by a preponderance, after shifting the burden to Nielsen.

**C.** Nielsen tried diligently to comply. It retained an economic expert to assess what would be a commercially reasonable price, offered a price based on that analysis to Cumulus, and cut the price further after the hearing.

For these reasons, this Court should reverse the Order. At minimum, it should vacate the sanction.

## ARGUMENT

### I. The Order impermissibly modifies the Injunction this Court affirmed.

The Injunction prohibits two practices. It compels nothing. The Order commands Nielsen to offer Nationwide to Cumulus at a price the court will approve, for a term of [redacted], on pain of a $50,000 daily fine. None of those obligations appears in the Injunction, and the command to sell cannot be squared with this Court's decision affirming it. The Order thus violates this Court's mandate and modifies the Injunction without the heightened showing that new mandatory relief requires.

#### A. The Order adds obligations the Injunction does not contain, contrary to this Court's mandate.

The Injunction and the Order point in opposite directions. The Injunction's operative words are "enjoined and restrained from." SA-046–47. It bars Nielsen from applying its Network Policy and from charging a commercially unreasonable rate for standalone Nationwide, and contains no affirmative commands. In contrast, the Order's operative words are "Nielsen is ordered to offer." SA-113. It directs Nielsen to offer

Nationwide to Cumulus "for a commercially reasonable rate" by 3:00 p.m. the next day, with a $50,000 fine for each day of noncompliance, and it holds that the [redacted] term Nielsen offered was too short. SA-112–13.

The Order thus expands the Injunction. It converts a ban on two practices into a command to deal. Nielsen had already made two offers of its own, SA-106, but the Order requires another, at a price the court will approve, measured by what the court thinks Nationwide ought to cost, *see* SA-108–13. And because the Order rejects a [redacted] term, the offer must also run for [redacted]. SA-112–13. The court imposed those obligations to remedy an offer it held "commercially unreasonable and thus in violation of" the Injunction. SA-113. It erred both in the remedy it chose and in finding a violation at all.

First, a prohibition on charging an unreasonable rate gives a court no power to prescribe the terms of a sale in the name of "enforce[ment]." SA-098, SA-113. When a party violates a prohibition, the remedy is an order "designed to ensure compliance with" it. *Perez*, 347 F.3d at 425. So had Nielsen's offer violated the Injunction, the court could at most have ordered Nielsen to withdraw it and left the parties to negotiate or part ways. It could not order Nielsen to make a new offer. Even in contempt,

a court "may not impose obligations on a party that are not unambiguously mandated by the decree itself," *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995), and that is so "even to fulfill the purposes of the decree more effectively," *Perez*, 347 F.3d at 424.

Second, Nielsen's offer did not violate the rate prohibition, which reaches only pricing connected with the tie. The prohibition bars the kind of standalone pricing that, in this Court's view, Nielsen had used to "coerce Cumulus into purchasing unwanted local data." *Cumulus Media*, 182 F.4th at 132. The Order itself recognizes that the Injunction is "predicated upon" that coercion. SA-108. Nielsen offered standalone Nationwide with no bundle on the table, SA-053 ¶ 5, and the Order found that its price was [redacted] below the one that had created the constructive tie, more than [redacted] times the $1.2 million gap the court had found coercive, SA-108. An offer that conditions nothing cannot be the "commercially unreasonable rate" the Injunction forbids.

The district court's reasons for finding a violation had nothing to do with coercion. By the court's own account, the offer's reasonableness "comes down to the soundness of Dr. Zmijewski's model and of Nielsen's proposed [redacted] contract term." SA-108. Neither bears on whether

Cumulus could buy Nationwide without buying local data. The court thus measured the offer by what it thought Nationwide ought to cost rather than by the tie the Injunction addresses.

The Order compelled a sale on Cumulus's terms. The court rejected both sides' benchmarks, faulted Nielsen for pricing above the presumption, and declined to say what rate would comply. *See* SA-108–13. That left Nielsen only one offer it could count on to satisfy the court before the fines began—the price and term Cumulus itself had proposed. SA-106. The Order's stated purpose confirms the point. It sought to keep Cumulus from "losing access to an essential service," SA-113, the very harm this Court concluded the Injunction could address without a sale, *Cumulus Media*, 182 F.4th at 140.

Nielsen made that compelled offer under protest at the 3:00 p.m. deadline and immediately withdrew it after this Court entered an administrative stay eleven minutes later. CA2 Dkt. 22.1 at 2. Cumulus told this Court that the Order "worked" because Nielsen offered "Nationwide at a price that Cumulus could accept." CA2 Dkt. 21.1 at 1. It said so even though the offer was for a [redacted], short of the [redacted] contracts the Order had treated as the measure of reasonableness. *See* SA-112–13.

Cumulus is right about how the Order works. It compels an offer on the buyer's own terms, on pain of daily fines. That is a forced sale.

The term requirement has even less footing in the Injunction's text. The Injunction bars Nielsen from "charging a commercially unreasonable rate"—language that describes price, not duration—for Nationwide "as a complete, standalone product." SA-046–47. The Order identifies no word of the Injunction that says how long a contract must run—because there is none. The court instead dismissed Nielsen's reliance on the text of the Injunction and found a [redacted] requirement in the "record" of industry practice. SA-112–13. But an injunction "must be construed as it is written, and not as it might have been written." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

The court suggested that Nielsen could not satisfy the Injunction by offering Nationwide "for a single day." SA-113. That hypothetical presupposes the obligation to offer that the Injunction lacks. But even on the hypothetical's own terms, a single day would give Cumulus a fragment of Nationwide, not the "complete, standalone product" whose rate the Injunction governs, SA-046–47. Nationwide is [redacted], so a [redacted] term covers [redacted]—[redacted],

for "[redacted]" SA-057–58 ¶¶ 16–18. The [redacted] term Nielsen offered thus complied with the Injunction.

This Court read the Injunction the same way. It described the rate prohibition as one that "prohibits [Nielsen] from charging 'a commercially unreasonable rate,'" and concluded that the Injunction was "tailored to the conduct" found unlawful, "Nielsen's express and constructive enforcement of its Network Policy." *Cumulus Media*, 182 F.4th at 139–40. It rejected the contention that only "a forced sale of Nationwide" could remedy Cumulus's harm and explained that a purely prohibitory injunction would fully protect Cumulus by "barring Nielsen from engaging in anticompetitive conduct during negotiations." *Id.* at 140. This Court thus affirmed an Injunction that prohibits conduct and compels no sale.

Until Cumulus moved to enforce the Injunction, no one read it to require more. When the district court entered the Injunction, it refused to compel dealing, holding that Cumulus "is not entitled to dictate the terms of a new contract with Nielsen" and recognizing that "[t]he antitrust laws do not require Nielsen to provide [Cumulus] with a product it can afford." SA-041–42, SA-045. And in the first appeal, Cumulus assured this Court that the Injunction "does not set a price" but simply

"prohibits" Nielsen from charging "a commercially unreasonable price." No. 26-88, Dkt. 69.1 at 4.

Once this Court's mandate issued, the district court could neither depart from what this Court had decided nor reopen issues that Cumulus had chosen not to appeal. A district court must follow this Court's mandate, which "forecloses relitigation of issues expressly or impliedly decided by the appellate court," *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (cleaned up), and bars any action "inconsistent with either the express terms or the spirit of the mandate," *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992). And "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand." *Ben Zvi*, 242 F.3d at 95. "[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948).

The Order breaks both constraints. It requires the sale this Court concluded was unnecessary to remedy Cumulus's harm. And Cumulus, which had asked the district court for a compelled contract and been refused, did not cross-appeal. The Order now gives Cumulus that

compelled dealing anyway, at a price the court will approve. The district court thus disregarded not only the text of its own Injunction but also this Court's decision affirming it.

### B. The Order imposes those obligations without the showing a new mandatory injunction requires.

Even apart from the mandate, the Order cannot stand because it changes the Injunction in ways only a new showing could justify. Whether an order interprets an injunction or modifies it "is determined by its actual effect." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005). An order that extends an injunction "beyond its original reach" modifies it, *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 100 (2d Cir. 2024) (quoting *In re Tronox Inc.*, 855 F.3d 84, 98 (2d Cir. 2017)), and adding a "command to sell" to a decree that contains none "effect[s] a substantial modification of the original decree," *Hughes v. United States*, 342 U.S. 353, 357–58 (1952). The Order makes exactly that change. *See supra* Argument, Part I.A.

Such a change is a modification, and it makes the Order appealable under 28 U.S.C. § 1292(a)(1), which reaches interlocutory orders "modifying" injunctions. Calling the Order "enforcement" does not alter that conclusion. This Court does "not simply take the District Court's word"

for what an order did. *Tronox*, 855 F.3d at 98. An enforcement order that "erred in [its] construction" of an injunction has "change[d] the meaning of" it, and so modified it. *Id.* (quotation marks omitted). The Order erred in just that way when it turned a prohibition on unreasonable rates into a command to sell at a price the court will approve.

Nor does the Order merit deference, because in "distinguishing interpretation from modification," this Court applies "*de novo* review." *Id.* Whatever deference a district court might sometimes receive when it actually *interprets* its own injunction, *see JLM Couture*, 91 F.4th at 100, none is due here, because the Order never construes or interprets the Injunction's language. Indeed, the court told Nielsen's counsel that "semantics about what the PI says is not helpful to this conversation." SA-049, at 11:18–19. Even if the Order had construed the Injunction's text, a reading that finds a command to sell in a prohibition, and a [redacted] term in an Injunction that says nothing about duration, would be an "obvious or blatant" misreading that amounts to a modification. *JLM Couture*, 91 F.4th at 100 (quotation marks omitted).

And because the Order modifies the Injunction, it could issue only on the showing the new relief requires. "When modifying a preliminary

injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). As this Court explained in the first appeal, the relief's "effect on the status quo drives the standard." *Cumulus Media*, 182 F.4th at 124 (quotation marks omitted). An injunction that "simply bar[s] a party from taking action that disturbs the status quo" is prohibitory, and one that "alter[s] the status quo by commanding some positive act" is mandatory. *JLM Couture*, 91 F.4th at 105 (cleaned up).

The Order is mandatory by any measure. It commands a positive act by a fixed deadline and enforces that command with daily fines. And it changes the arrangement the Injunction put in place, under which Nielsen could decline to sell on terms it would not accept. A movant seeking relief of that kind must "meet the more stringent standard." *Id.* That standard requires, among other things, that the movant "show a clear or substantial likelihood of success on the merits and make a strong showing of irreparable harm." *Cumulus Media*, 182 F.4th at 124 (quotation marks omitted).

The showing Cumulus made last December does not carry over to this new relief. In the first appeal, this Court upheld the district court's conclusion that Cumulus had met the heightened standard for the Injunction, which altered the status quo by barring the Network Policy. *See id.* at 124. But that showing concerned a likely constructive tie, which the Injunction already prohibits. It established nothing about whether Cumulus may compel Nielsen to deal—a right no court has found. *See infra* Argument, Part II.A. "[T]he broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be." *Trump v. CASA, Inc.*, 606 U.S. 831, 854 (2025) (quotation marks omitted).

Cumulus never attempted a new showing. It moved only to "enforce" the existing Injunction, even as it asked the court to order Nielsen to make, within two business days, a binding offer at a rate consistent with the Injunction's presumption—the kind of compelled dealing the court had refused it in December. D. Ct. Dkt. 188 at 1, 3; SA-045. The district court, in turn, applied only a preponderance standard in assessing whether Nielsen had violated the Injunction. SA-107, SA-113. It never analyzed whether Cumulus was clearly likely to succeed on a claim

entitling it to an offer at a court-approved price, much less one running for [redacted]

A finding of violation cannot substitute for that showing. Compliance with existing relief and entitlement to new relief are different questions. By answering only the first, the court "effectively assumed [Cumulus's] success on the merits" of a claim no court has ever assessed. *JLM Couture*, 91 F.4th at 105 n.11; *see infra* Argument, Part II.A. That is legal error, and a district court "abuses its discretion when it . . . makes an error of law." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010) (quotation marks omitted).

## II. The Sherman Act does not permit a court to compel dealing or set its terms absent a duty to deal.

The Order also exceeds the district court's remedial power under Section 16 of the Clayton Act, a question this Court reviews *de novo*. *See Bronson Partners*, 654 F.3d at 365; *see also State Farm*, 120 F.4th at 79 (legal error is reviewed *de novo*). Section 16 authorizes relief only "against threatened loss or damage by a violation of the antitrust laws," 15 U.S.C. § 26, and equity confines that relief to what is "necessary to cure the effects of the harm caused by the violation," *City of New York v.*

*Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (quotation marks omitted). An injunction may reach otherwise lawful conduct only if that conduct is "connected with the acts found to be illegal." *Cumulus Media*, 182 F.4th at 139 (quoting *United States v. Loew's, Inc.*, 371 U.S. 38, 53 (1962)).

The only "violation of the antitrust laws" at issue here, 15 U.S.C. § 26, is a likely constructive tie. Neither of the Order's two commands—to offer Nationwide to Cumulus and to submit Nielsen's price and terms to the court's judgment—is necessary to cure that tie.

### A. The Order compels Nielsen to deal though no court has found a duty to deal.

A court may compel Nielsen to deal with Cumulus only if Nielsen owes Cumulus a duty to deal or dealing is needed to cure the violation found. Neither is true here. The district court never found, and this Court never held, that Nielsen owes Cumulus a duty to deal, and without one Nielsen is free to tell Cumulus no. Nielsen is a private business, not a regulated utility. The Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Trinko*, 540 U.S. at 408 (quoting *United States*

*v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). Even a monopolist "retains this right," this Court has held, "as long as he has no purpose to restrain competition or to enhance or expand his monopoly, and does not act coercively." *Off. Airline Guides, Inc. v. FTC*, 630 F.2d 920, 927–28 (2d Cir. 1980).

The law guards that right for good reason. A duty to deal lies "at or near the outer boundary of § 2," because compelled dealing "may lessen the incentive for the monopolist . . . to invest in . . . economically beneficial facilities." *Trinko*, 540 U.S. at 407–09. Nielsen's Nationwide product exists because Nielsen pays to survey listeners in more than 270 local markets, and Nielsen prices its products to recover the cost of that data. SA-101–02. An order compelling Nielsen to deal on a court's terms decides how much of that investment Nielsen gets back, the kind of intervention that "reduc[es] the incentive . . . to innovate, invest, and expand." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013) (Gorsuch, J.).

The Order described Nationwide as "an essential service," SA-113, but that label does not create a duty to deal either. The only doctrine that would link a duty to deal to Nationwide's importance, the so-called

essential-facilities doctrine, is one the Supreme Court has "never recognized." *Trinko*, 540 U.S. at 411. Cumulus has never presented such a claim here. And the doctrine, where it applies, is reserved for the denial of a facility "to a competitor." *Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 569 (2d Cir. 1990) (quotation marks omitted). Cumulus is Nielsen's customer, not its competitor.

That leaves the constructive tie the district court found and this Court affirmed, and curing that tie does not require compelled dealing. This Court defined constructive tying as "the pricing of two products that has the effect of conditioning the sale of one product on the other." *Cumulus Media*, 182 F.4th at 140. The cure for a tie is to end the conditioning (which requires no sale), and the Injunction does just that by barring the Network Policy and any standalone price that recreates it. *See id.*; *see also Loew's*, 371 U.S. at 52–55 (prescribing terms that bar conditioning). Had Nielsen made a coercive offer, the court could have ordered Nielsen to withdraw it, *see supra* Argument, Part I.A, but not to deal.

The command to deal also reaches well beyond the tie. The Injunction *already* bars "the precise practices found to have violated the [Sherman] Act," conditioning Nationwide on local data, by policy or by price.

*Cumulus Media*, 182 F.4th at 140 (emphasis omitted) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 579–80 (1966)). Compelled dealing adds relief for a *different* wrong, an unlawful refusal to deal, which was never "fairly the subject of litigation" and for which Nielsen has never been held liable. *Mickalis*, 645 F.3d at 145. Relief of that kind is not "narrowly tailored to fit" the "specific legal violation[]" at issue here. *Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 50 (2d Cir. 1996).

The Order itself confirms that the command to deal targets Cumulus's access, not the tie. The court compelled the offer to keep Cumulus, which is "emerg[ing] from a Chapter 11 bankruptcy," from losing access to Nationwide. SA-113. But the purpose of the Sherman Act "is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). When a buyer cannot pay a price the seller will accept, the ordinary result is that no sale occurs.

Nor does Nielsen's willingness to sell at its own price justify compelling a sale at Cumulus's. Every seller is willing to sell at some price. If that were enough to justify compelled dealing, no seller could ever say no. Yet "[i]t has always been the prerogative of a manufacturer to decide

with whom it will deal," *Off. Airline Guides*, 630 F.2d at 927 (quoting *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 133 (2d Cir. 1978) (en banc)), and a firm with no duty to deal need not sell "at the . . . prices the plaintiffs would have preferred," *linkLine*, 555 U.S. at 450–51. The Injunction affirmed by this Court compels no sale, *see Cumulus Media*, 182 F.4th at 140, and so left Nielsen free to walk away. Nothing in the Sherman or Clayton Acts permitted the district court to take that freedom away.

### B. The Order makes the district court a rate-setting regulator.

The Order does not stop at compelling an offer. It also turns the Injunction into open-ended regulation of the price and terms of Nielsen's offers, a job antitrust law denies to judges. "When it comes to fashioning an antitrust remedy," the Supreme Court has instructed, "caution is key." *NCAA v. Alston*, 594 U.S. 69, 106 (2021). "Judges must be wary . . . of the temptation to specify 'the proper price, quantity, and other terms of dealing'—cognizant that they are neither economic nor industry experts." *Id.* at 102 (quoting *Trinko*, 540 U.S. at 408). "[J]udges make for poor 'central planners' and should never aspire to the role." *Id.* at 103 (quoting *Trinko*, 540 U.S. at 408).

This Court has long agreed. It has warned that "judicial oversight of pricing policies would place the courts in a role akin to that of a public regulatory commission," and it has "decline[d] that function unless Congress clearly bestows it." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 294 (2d Cir. 1979). It has turned away even an expert agency's attempt to "substitute its own business judgment for that of the monopolist." *Off. Airline Guides*, 630 F.2d at 927. Those principles cabin the Injunction's rate prohibition to the tie.

As this Court explained it, the rate prohibition regulates price only as far as needed to prevent "the act[] found to be illegal"—the constructive tie. *Cumulus Media*, 182 F.4th at 139 (quotation marks omitted). Up to that point, Nielsen remains "free to assign what prices [it] hope[s] to secure" for its "own products," *Novell*, 731 F.3d at 1072, because even monopoly pricing "is an important element of the free-market system," *Trinko*, 540 U.S. at 407—as the district court acknowledged, *see* SA-110. In this Court's view, a high standalone price crosses the line only when it "conditions [the buyer's] purchase of one product on the purchase of another." *Cumulus Media*, 182 F.4th at 131 (quoting *Unijax, Inc. v. Champion Int'l, Inc.*, 683 F.2d 678, 685 (2d Cir. 1982)). That is why this

Court, in rejecting Nielsen's argument that relief "cannot regulate a product's price," relied on the link between a coercive price and the tie. *Id.* at 139. A price that conditions nothing has no such link, so an injunction that restrains it improperly restricts "legal conduct." *Mickalis*, 645 F.3d at 145.

The Order regulated a price that conditions nothing—and it did so the way a regulator would. It discounted the prices other customers pay on the theory that "anticompetitive monopolistic conduct" had likely tainted them, a premise that, if accepted, disqualifies every price Nielsen charges as a reference point. SA-109. It second-guessed Nielsen's calculation of its own costs and its expert's assumption that customers value Nationwide and local data alike, finding both "dubious." *Id.* And it treated the decline in Westwood One's revenue as well as Cumulus's bankruptcy as relevant to what Nielsen may charge. SA-110–11.

Those are the questions a utility commission asks. A court cannot find "the price that competition 'would have set'" absent a monopoly "without examining costs and demands, indeed without acting like a rate-setting regulatory agency." *linkLine*, 555 U.S. at 454 (quoting *Town of Concord v. Bos. Edison Co.*, 915 F.2d 17, 25 (1st Cir. 1990) (Breyer, C.J.)).

Antitrust law leaves those questions to the market, which is "more effective than the heavy hand of judicial power when it comes to enhancing consumer welfare." *Alston*, 594 U.S. at 106. Even courts that have found an unlawful refusal to deal and ordered monopolists to sell have typically left them free to charge "any nondiscriminatory price that the market will bear." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1226 (9th Cir. 1997). The Order, entered with no finding of any duty to deal, substitutes the judge for the market.

The Order's term requirement fails for the same reason. The court rejected a [redacted] term because [redacted] contracts are more typical in the industry (though it acknowledged that Nielsen sometimes offers [redacted] terms). SA-112. But industry custom is not antitrust law. For antitrust purposes, "there is no reason to distinguish between price and nonprice components of a transaction," *linkLine*, 555 U.S. at 450, and the length of Nielsen's offer is no more the court's to set than its price.

Nor would the court's role end with this contract. Because the Injunction only forbids, Nielsen could always decline to sell rather than accept a price the court approves. The Order removes that option for as long as this litigation lasts, and no one can say in advance what will pass

muster. Cumulus itself "does not believe" that even its *own* "latest counteroffer to Nielsen reflects a commercially reasonable price." CA2 Dkt. 17.1 at 15 n.2. And a price approved for a [redacted] term is unlikely to remain reasonable, because "[t]he reasonable price fixed today may through economic and business changes become the unreasonable price of tomorrow." *United States v. Trenton Potteries Co.*, 273 U.S. 392, 397 (1927).[2]

Under the Order's logic, every later offer and renewal would require what this one did—depositions, declarations, and a live evidentiary hearing on price, term, and the analysis behind them. *See* SA-108–12. That is the "minute inquiry [into] whether a particular price is reasonable or unreasonable" that the Supreme Court long ago refused to make part of antitrust enforcement. *Trenton Potteries*, 273 U.S. at 397–98. "An antitrust court is unlikely to be an effective day-to-day enforcer" of such a decree, *Alston*, 594 U.S. at 102 (quotation marks omitted), and "[n]o court should impose a duty to deal that it cannot explain or adequately and

---

[2] Nielsen maintains that the Injunction's "commercially unreasonable" standard is itself inadministrable, and it has asked the Supreme Court to review the decision affirming it. *See* Pet. 24–25. This appeal does not ask this Court to revisit that question, because the Order fails even on the Injunction's own terms.

reasonably supervise," *Trinko*, 540 U.S. at 415 (quotation marks omitted). The Order does exactly that.

Nor does it matter that the Order does not expressly name a price. A court that condemns a seller's price, and fines the seller $50,000 a day unless and until it offers one the court will accept, has set the price, even if it keeps the number to itself and makes the seller guess. The district court said it was "reluctant to make myself a rate setter here," A-109, at 22:1, and then became one. The making of rates "is a legislative and not a judicial function," *Terminal R.R. Ass'n of St. Louis v. United States*, 266 U.S. 17, 30 (1924), and nothing in the Injunction, or in Section 16 of the Clayton Act, allowed the district court to become the rate commission for a private business.

## III. The Order's daily fine is a contempt sanction imposed without contempt findings.

The Order backs its command with a $50,000 fine for every day Nielsen fails to make an offer the court deems commercially reasonable. SA-113. Even if the Order otherwise stood, the fine could not. A coercive sanction may issue only where the movant proves that the order violated is "clear and unambiguous," that "the proof of noncompliance is clear and convincing," and that the party "has not diligently attempted to comply

in a reasonable manner." *King*, 65 F.3d at 1058. "[T]he moving party . . . bears the burden of establishing the three factors." *Latino Officers Ass'n v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009). Such a sanction "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct," which exists whenever there is an "objectively reasonable basis for concluding that the [party's] conduct might be lawful." *Taggart v. Lorenzen*, 587 U.S. 554, 557, 561 (2019) (emphasis omitted).

This three-factor standard governs whether or not the district court expressly holds a party in contempt. The court here invoked its power to sanction "without making a finding of contempt," SA-107, but then imposed the classic coercive civil sanction—a fine "for each day a contemnor fails to comply with an affirmative court order," *Bagwell*, 512 U.S. at 829. That Nielsen could avoid the fine by complying is what makes it a civil sanction rather than a criminal one. *See id.* at 827–29. And the label does not matter in any event, because *any* "supplementary remedy to compel compliance" is reviewed "in the same manner as if the court had held [the defendant] in contempt." *N.Y. Times*, 196 F.3d at 80 (quotation marks omitted).

The district court recited that standard, SA-107, but made no finding on any of the three elements, *see* SA-108–13. None could have been made on this record, and the absence of any one of them requires vacatur.

### A. The Injunction was not clear and unambiguous as applied to Nielsen's offer.

The question is "not whether the [injunction] is clear in some general sense," but rather "whether it unambiguously proscribes the challenged conduct." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008). A court thus cannot assess an injunction "in a vacuum"—it must do so "with reference to the conduct in question," *Perez*, 347 F.3d at 424, "*at the time* of the alleged conduct," *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 129 (2d Cir. 2021). Even an injunction "previously affirmed by this Court" as clear enough "on its own terms" may still be "insufficiently clear and unambiguous" as applied. *Chevron Corp. v. Donziger*, 990 F.3d 191, 197 (2d Cir. 2021).

The Injunction was not clear and unambiguous as to the price Nielsen offered. Federal Rule of Civil Procedure 65(d) requires an injunction to describe in reasonable detail the acts it restrains, and this Court has stressed that "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed" before they risk contempt.

*Cumulus Media*, 182 F.4th at 139 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). The panel held that the Injunction met that requirement only by relying on the presumption, while declining to decide "whether a prohibition on charging an 'unreasonable' price may be too ambiguous on its own." *Id.* at 139–40. But the presumption is optional. The district court agreed it does not define "the only commercially reasonable rate," then held that Nielsen "assumed the risk" by pricing outside it, SA-112–13—inverting the rule that "[a]mbiguities and omissions in orders redound to the benefit of the person charged with contempt," *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 143 (2d Cir. 2014) (quotation marks omitted). And if Nielsen assumed a *risk* by pricing above the presumption, then the Injunction did not clearly and unambiguously forbid the offer Nielsen made.

Outside the presumption, the Injunction offers only the words "commercially unreasonable rate." Nielsen read those words, as this Court had explained them, to bar pricing that recreates the tie, and its offer undercut the condemned price by more than [redacted] times the gap the court had found coercive. *See* SA-108. The district court read them instead to call for judgments about Nielsen's costs, the value customers

place on its products, Westwood One's revenue, Cumulus's bankruptcy, and the effects of past monopoly conduct—none of which the Injunction mentions. SA-108–12. At minimum, then, the Injunction was "subject to varying interpretations," and a court may not "hold a party in contempt for violating" such an order. *In re Gravel*, 6 F.4th 503, 513 (2d Cir. 2021).

A panel of this Court has already found Nielsen likely to succeed on this appeal, staying the Order in full on a "strong showing" of likely success. *Nken*, 556 U.S. at 434 (quotation marks omitted); *see* CA2 Dkt. 33.1. That ruling alone suggests a "fair ground of doubt" about the wrongfulness of Nielsen's conduct. *Taggart*, 587 U.S. at 557.

The Injunction is even less clear as applied to the [redacted] term Nielsen offered. It prohibits only an unreasonable "rate" and says nothing about duration. SA-046–47. The district court looked past the text to "[t]he record," which it said "makes clear that . . . commercially reasonable rates in this industry are[] based upon [redacted] contracts," SA-112–13.

But in contempt proceedings, "a decree will not be expanded by implication or intendment beyond the meaning of its terms." *Terminal R.R. Ass'n*, 266 U.S. at 29. A party must be able to "ascertain *from the four*

*corners of the order* precisely what acts are forbidden," *Town of Islip v. E. Air Lines, Inc.*, 793 F.2d 79, 83 (2d Cir. 1986) (emphasis added) (quotation marks omitted), and Rule 65 forbids defining those acts by "referring to the complaint or other document," Fed. R. Civ. P. 65(d)(1)(C). The record lies outside the Injunction's four corners. No party can be punished for "disobeying a command that defies comprehension." *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).

### B. Cumulus did not establish a violation by clear and convincing proof.

The court applied a preponderance standard in finding a violation, SA-107, but "a bare preponderance of the evidence will not suffice" for contempt, *Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.*, 341 F.2d 101, 102 (2d Cir. 1965). Cumulus could not have met the clear-and-convincing standard. It offered no expert and no analysis of its own, only proposed benchmarks drawn from Nielsen's prices to two other customers. One buys "hundreds of products alongside the Nationwide Report" in a single contract, making it "difficult to discern" the "price it would pay for Nationwide in a world where it did not purchase other Nielsen products." SA-103 n.1. The other is a far smaller buyer of standalone

Nationwide in a different line of business. SA-103; *see* SA-094, at 86:12–16; SA-095–96, at 114:14–115:14.

Neither is an appropriate comparator, as the district court recognized. Cumulus's theory that a reasonable price must track them did not "adequately account for Nielsen's bundled pricing strategy or its historic practice of charging different rates for different values extracted from its products," SA-108, nor did Cumulus offer "any way to cure the faults it identifie[d]" in Nielsen's analysis, SA-111. With Cumulus's benchmarks rejected and Nielsen's analysis discounted, the court's only finding comparing the offer to the condemned price favored Nielsen. SA-108. Nielsen did not violate the Injunction, and nothing in the record proves a violation by any standard, let alone clearly and convincingly.

The court found a violation anyway by shifting the burden to Nielsen. At the August 28 conference, it told Nielsen's counsel that it was "your burden to show why [redacted] here would be commercially reasonable," SA-049, at 11:14–16, and described the hearing as Nielsen's chance to "meet [its] burden," SA-050, at 12:23–25. The Order then reproached Nielsen for having "not offered a convincing explanation" of its [redacted] term, SA-112, even though Nielsen's unrebutted testimony

explained that it offers [redacted] terms "when contract negotiations are in flux or have uncertainty," as these negotiations did, SA-057–58 ¶¶ 16–18. The court treated the motion as one Nielsen had to defeat rather than one Cumulus had to win.

But this was *Cumulus's* motion and *Cumulus's* "burden." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). Whether a party's conduct violates an order "is not [its] burden to explain." *Id.* at 251. A court that rules against the enjoined party for failing to present "credible evidence," "rather than holding the [movant] to its clear and convincing burden," commits reversible "burden shift[ing]." *Id.*

### C. Nielsen diligently attempted to comply.

A party that makes "reasonably diligent and energetic" efforts to comply with "a fundamentally ambiguous order" cannot be held in contempt. *Town of Islip*, 793 F.2d at 85. Nielsen made "substantial efforts to comply" with the Injunction. *King*, 65 F.3d at 1061. No customer of Westwood One's size had ever bought Nationwide alone, so Nielsen had no precedent to price from. *See* SA-055–56 ¶¶ 12–13. Within days of this Court's decision, Nielsen retained an economic expert—at substantial expense—to benchmark a commercially reasonable price against its arm's-

length contracts, SA-103–05, priced its first offer at less than half the condemned price on the strength of that expert analysis, SA-106, and cut the price again the day after the hearing, *id.*

The Order's only reference to good faith criticized Nielsen for pricing "many multiples above" the presumption. SA-113. The presumption is meant to capture the highest 2026 rate any broadcaster pays for Nationwide. But the number the court treated as that rate was the Nationwide line item in one customer's contract for hundreds of Nielsen products, and the Order elsewhere acknowledged that this line item does not reliably show what that customer would pay for Nationwide on its own. SA-103 n.1. So the figure the court called the presumption was not a reliable stand-in for it, and a multiple of that number says nothing about Nielsen's good faith.

## CONCLUSION

Cumulus asked the district court to compel a contract last December, lost, and did not cross-appeal. It cannot obtain that relief now by calling it enforcement. This Court should reverse the Order. At minimum, it should vacate the sanction.

Dated: September 30, 2026

Respectfully submitted,

/s/ *Thomas H. Dupree Jr.*

Thomas H. Dupree Jr.
*Counsel of Record*
Helgi C. Walker
Zachary B. Copeland
Patrick M. Kennedy
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
tdupree@gibsondunn.com
hwalker@gibsondunn.com
zcopeland@gibsondunn.com
pkennedy@gibsondunn.com

Jefferson E. Bell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
jbell@gibsondunn.com

*Counsel for Defendant-Appellant The Nielsen Company (US), LLC*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because it contains 11,062 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

Dated: September 30, 2026

By: /s/ *Thomas H. Dupree Jr.*
Thomas H. Dupree Jr.